```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3  UNITED STATES OF AMERICA,

4              Plaintiff,
                                    HONORABLE PAUL D. BORMAN
5
     v.                             No. 14-20779
6                                   No. 15-20311
   ARIA OMAR SABIT,
7
              Defendant.
8  _____/

9

10                    EXCERPTS OF PLEA HEARING

11                    Friday, May 22, 2015

12                         4:10 p.m.

13
   APPEARANCES:
14
      For the Plaintiff:        REGINA R. MCCULLOUGH
15                              PHILIP A. ROSS
                                U.S. Attorney's Office
16                              211 West Fort Street
                                Suite 2001
17                              Detroit, Michigan  48226
                                (313) 226-9100
18

19                              JONATHAN BAUM
                                U.S. Department of Justice
20                              1400 New York Avenue NW
                                Washington, D.C.  20005
21                              (202) 230-8655

22
   (Appearances continued)
23

24            To Obtain Certified Transcript, Contact:
              Leann S. Lizza, CSR-3746, RPR, CRR, RMR
25                         (313) 965-7510
```

```
 1    APPEARANCES (Continued):

 2       For the Defendant:          TIMOTHY M. LESSING
                                     Freedman, Lessing, Kutinsky &
 3                                   Freedman, P.C.
                                     6304 Orchard Lake Road
 4                                   West Bloomfield, MI  48322
                                     (248) 353-6300
 5
                                     JOSEPH A. NISKAR
 6                                   23023 Orchard Lake Road
                                     Suite A-1
 7                                   Farmington, Michigan  48336
                                     (248) 941-4287
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**TABLE OF CONTENTS**

                                                                Page

**Plea hearing**                                                4

  California indictment                                        11

  Michigan indictment                                          22


Exhibits:                                                      Received

  (None offered.)

**PLEA HEARING**

1                                              May 22, 2015

2                                              Detroit, Michigan

3                               -   -   -

4      (Call to order of the Court, 4:10 p.m.)

5      (Court, Counsel and Defendant present.)

6           THE COURT CLERK:  Now calling the case of *United*

7   *States of America versus Aria Omar Sabit, M.D.*, Case Numbers

8   14-20779 and 15-20311.

9           THE COURT:  Okay.  Parties please identify themselves

10  for the record beginning with the government.

11          MS. MCCULLOUGH:  Good afternoon, Your Honor.  May it

12  please the Court, Regina McCullough appearing on behalf of the

13  United States.

14          MR. ROSS:  Philip Ross, forfeiture counsel, appearing

15  on behalf of the United States.

16          MR. BAUM:  Jonathan Baum appearing on behalf of the

17  United States.

18          THE COURT:  Okay.

19          MR. LESSING:  Good afternoon.

20          THE COURT:  Very good.  Good afternoon, sir.

21          MR. LESSING:  Good afternoon, Your Honor.  Timothy

22  Lessing appearing on behalf of Mr. Aria Sabit who is to my

23  right.

24          THE COURT:  Good afternoon, Dr. Sabit.

25          MR. NISKAR:  May it please the Court, Joseph Niskar on

1    behalf of Dr. Sabit.

2           THE COURT:  Very good.  Have a seat for a minute.  Let

3    me just put things together here.

4           Should we take the forfeiture bill of particulars

5    first?  That would seem to be getting that out of the way.

6           MR. NISKAR:  No objection to that.

7           THE COURT:  Okay.  Then why don't you and your client

8    come to the podium and we'll proceed.

9           Why don't you proceed, Mr. Ross, and then we'll go

10   over it with Dr. Sabit and his attorneys.

11          MR. ROSS:  Thank you, Your Honor.

12          As part of the Rule 11 plea agreement, the Defendant

13   has agreed to forfeit proceeds from the private sale of the

14   home at 3645 Lahser Road in Bloomfield Hills.  That property

15   description is included on page 25 of the Rule 11 plea

16   agreement.

17          Also on page 25 of the Rule 11 plea agreement, the

18   Defendant has entered into an agreement to forfeit funds from

19   four separate bank accounts that are listed, three at Comerica

20   and one at PNC.

21          Also, with respect to the forfeiture, the Defendant

22   has waived any challenge he may have that the forfeiture

23   constitutes an excessive fine under the Eighth Amendment.  He

24   also agrees to enter a number of documents related to the

25   forfeiture at or before sentencing, and he understands that

```
 1    forfeiture is part of the sentence and that he waives his right

 2    to have that included in the judgment or orally pronounced at

 3    the time of sentencing.

 4            THE COURT:  Okay.  Counsel, which one of you will be

 5    representing Dr. Sabit on this forfeiture matter?

 6            MR. LESSING:  Mr. Niskar will, Your Honor.

 7            MR. NISKAR:  I will, Your Honor.

 8            THE COURT:  Okay.  Mr. Niskar, have you gone over this

 9    forfeiture bill of particulars with Dr. Sabit?

10            MR. NISKAR:  I have.

11            THE COURT:  Okay.  Dr. Sabit, have you gone over the

12    forfeiture bill of particulars with Mr. Niskar?

13            THE DEFENDANT:  I have.

14            THE COURT:  And you understand that you're going to

15    forfeit the home on Lahser Road in Bloomfield Hills.  Is that

16    correct, sir?

17            MR. NISKAR:  He's forfeiting his interest in the

18    proceeds.

19            THE COURT:  Okay.  Your interest in the proceeds of

20    the home?

21            MR. NISKAR:  That's right.

22            THE COURT:  The home will be sold; is that what you're

23    saying?

24            MR. NISKAR:  Yes.

25            THE COURT:  And you're also forfeiting your interest
```

```
 1    in the four bank accounts, three at Comerica and a fourth at
 2    PNC.  Is that correct, Doctor?
 3             THE DEFENDANT:  It is.
 4             THE COURT:  Okay.  Mr. Ross, are there any questions
 5    that you want to further ask to establish a factual basis
 6    additionally with regard to the forfeiture?
 7             MR. ROSS:  No, Your Honor.
 8             THE COURT:  Okay.  Then I will -- if you'll present an
 9    order, then I will sign that.  It is on the record.
10             MR. ROSS:  Thank you, Your Honor.
11             THE COURT:  Okay.  Then let us proceed to the other
12    matter.  My understanding, Mr. Niskar and Mr. Lessing, is that
13    your client wishes to enter pleas as to two separate
14    prosecutions, one here and the other from the Central District
15    of California.  Is that correct?
16             MR. NISKAR:  That is correct.
17             MR. LESSING:  That's correct, Your Honor.
18             THE COURT:  Okay.  Ms. Tofil, if you'd please swear in
19    Dr. Sabit, we'll proceed.
20             THE COURT CLERK:  Raise your right hand.
21        (Dr. Aria Sabit, sworn, 4:14 p.m.)
22             THE COURT:  Okay.  Dr. Sabit, I'm going to question
23    you regarding the facts of the crimes charged.  It's important
24    that you tell the truth.  You understand that, sir?
25             THE DEFENDANT:  I do.
```

```
1              THE COURT:  Okay.  Any false answers can be used

2    against you in a separate prosecution for perjury, so it's

3    important to tell the truth.  You understand?

4              THE DEFENDANT:  I do.

5              THE COURT:  Okay.  What is your full name?

6              THE DEFENDANT:  Aria Omar Sabit.

7              THE COURT:  Okay.  You understand that you have a

8    constitutional right to remain silent and not incriminate

9    yourself?

10             THE DEFENDANT:  I do.

11             THE COURT:  And you want to give that up and plead

12   guilty today; is that correct, sir?

13             THE DEFENDANT:  Yes.

14             THE COURT:  First I'm going to ask some background

15   questions to assure that you're competent to enter a plea at

16   this time.  How old are you, sir?

17             THE DEFENDANT:  39.

18             THE COURT:  And how far did you go in school?

19             THE DEFENDANT:  Medical school.

20             THE COURT:  Okay.  Do you read, write and understand

21   the English language?

22             THE DEFENDANT:  I do.

23             THE COURT:  Are you now under the influence of any

24   medication, drugs or alcohol?

25             THE DEFENDANT:  I'm not.
```

```
1              THE COURT:  I find that Dr. Sabit is capable of

2      entering a knowing plea.  Do you agree, Mr. Niskar?

3              MR. NISKAR:  I agree.

4              THE COURT:  Do you agree, Miss McCullough?

5              MS. MCCULLOUGH:  Yes, Your Honor.

6              THE COURT:  You have your attorneys beside you in

7      court today.  Have you discussed this matter with them?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Are you satisfied with their advice and

10     service?

11             THE DEFENDANT:  I am.

12             THE COURT:  Do you understand that if your guilty plea

13     is accepted, you give up valuable civil rights, such as the

14     right to vote, hold office, serve on a jury, possess or be

15     around firearms.  You understand that?

16             THE DEFENDANT:  I do.

17             THE COURT:  Okay.  If I accept your plea of guilty,

18     you give up many important constitutional rights, and I'll go

19     over some of the most important to make sure you understand

20     what you're giving up.

21             You understand, sir, that you have the right to plead

22     not guilty and to have a trial before the Court or a jury of 12

23     citizens?

24             THE DEFENDANT:  I do.

25             THE COURT:  You understand at trial you'd be presumed
```

**PLEA HEARING**

```
 1    innocent and the government would have to prove you guilty

 2    beyond a reasonable doubt.  You understand that, sir?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Also at trial, you could question

 5    witnesses against you through your attorneys and have the Court

 6    order any witnesses you want for your defense to appear at

 7    trial.  You understand that, sir?

 8              THE DEFENDANT:  I do.

 9              THE COURT:  Also at trial you could remain silent

10    during the trial, not have your silence used against you or

11    testify if you want to testify.  You understand that?

12              THE DEFENDANT:  I do.

13              THE COURT:  Understanding these rights, do you want to

14    give them up and plead guilty today?

15              THE DEFENDANT:  I do.

16              THE COURT:  Okay.  Have you received copies of the

17    indictments, the charges against you, in this case?

18              THE DEFENDANT:  Yes, I have.

19              THE COURT:  There's one from California and one from

20    Southern Division of Michigan.  And I presume that the doctor

21    has been arraigned on both indictments?

22              MR. NISKAR:  He was this afternoon.

23              MS. MCCULLOUGH:  Your Honor --

24              MR. NISKAR:  I'm sorry.

25              MS. MCCULLOUGH:  Just for the record, they are
```

**PLEA HEARING**

1    informations, Your Honor, and he was arraigned this afternoon

2    on both informations and did execute a waiver of indictment.

3              THE COURT:  Okay.  So we have an information from

4    California that's CR-0258.  That's the California number.  And

5    the number here is 15-20311.  Is that correct?

6              MS. MCCULLOUGH:  That's correct, Your Honor.

7              MR. LESSING:  That's correct.

8              THE COURT:  And the Michigan one is 14-20779.  Is that

9    correct?

10             MS. MCCULLOUGH:  That is correct, Your Honor.

11             THE COURT:  Okay.  Then, first, with regard to the

12   Rule 11, let me just look at it.  The counts of conviction in

13   the Michigan case will be Counts 1, 2, 3, 4 and 5 of the first

14   superseding information.  Is that correct, Miss McCullough?

15             MS. MCCULLOUGH:  That's correct.

16             THE COURT:  Is that correct, Mr. Niskar?

17             MR. NISKAR:  That is correct.

18             THE COURT:  And the California information, the plea

19   would be to Count 1 of the information; is that correct?

20             MS. MCCULLOUGH:  That is correct, Your Honor.  And

21   with respect to the California case, Jon Baum will be handling

22   that aspect of the case, Your Honor.

23             THE COURT:  Okay.  Very good.

24             Then in terms of explaining the charges against the

25   Defendant, why don't we start with Mr. Baum going over the

| 1 | charge to which the Defendant is going to plead guilty in the |
| 2 | California case, and then Miss McCullough will go over the |
| 3 | charges to which the Defendant is going to plead in the |
| 4 | Michigan case, so. |
| 5 | MR. BAUM:  Your Honor, the Defendant has been charged |
| 6 | in Count 1 of the criminal information in Case Number 15-20311 |
| 7 | with one count of conspiracy to commit health care fraud in |
| 8 | violation of Title 18 United States Code Section 1349. |
| 9 | THE COURT:  Okay.  A little bit louder would help and |
| 10 | a little slower would help Ms. Lizza too.  Thank you. |
| 11 | MR. BAUM:  The statutory -- the statutory maximum |
| 12 | penalty for Count 1 is 20 years imprisonment, a fine of |
| 13 | $250,000 or twice the pecuniary gain, or loss, pursuant to |
| 14 | Title 18 United States Code Section 3571 and a three-year term |
| 15 | of supervised release. |
| 16 | THE COURT:  Okay.  You understand, Doctor, those are |
| 17 | the charges against you on the California case? |
| 18 | THE DEFENDANT:  I do. |
| 19 | THE COURT:  Can you also explain what the conduct is |
| 20 | in that count that you're alleging Dr. Sabit committed, in |
| 21 | terms of it can be a summary because I would presume that he's |
| 22 | gone over the matter completely with his attorneys.  Is that |
| 23 | correct, Mr. Niskar? |
| 24 | MR. NISKAR:  That's correct. |
| 25 | THE COURT:  Mr. Lessing? |

```
 1              MR. LESSING:  Yes.

 2              THE COURT:  Okay.

 3              MR. BAUM:  I will provide the Court with a summary,

 4  Your Honor.

 5              THE COURT:  Okay.

 6              MR. BAUM:  Prior to moving to Michigan, Dr. Sabit was

 7  a resident of Ventura, California, within the Central District

 8  of California.

 9              THE COURT:  That's V-E-N-T-U-R-A.

10              MR. BAUM:  Yes, Your Honor.

11              Dr. Sabit was also a licensed neurosurgeon in

12  California.  In approximately February, 2010, Dr. Sabit became

13  involved with Apex, A-P-E-X, Medical Technologies, LLC while he

14  was on the staff of a California hospital.

15              Apex was owned by another neurosurgeon and three

16  nonphysicians who operated Apex as a physician-owned

17  distributorship and paid neurosurgeons lucrative illegal

18  kickbacks tied directly to the volume and complexity of the

19  surgeries that the surgeons performed and the number of Apex

20  spinal implant devices that the surgeons used in their spine

21  surgeries.

22              In exchange for an opportunity to invest in Apex and

23  share in its profits, Dr. Sabit agreed to convince his hospital

24  to buy spinal implant devices from Apex and use a sufficient

25  number of Apex spinal implant devices in his spine surgeries.
```

```
 1    Dr. Sabit and Apex's co-owners used Apex to operate an illegal
 2    kickback scheme.  In doing so, they, among other things,
 3    concealed Dr. Sabit's involvement in Apex from outsiders.
 4    Dr. Sabit then required the hospital and surgical centers where
 5    he and his fellow neurosurgeons performed surgeries to purchase
 6    spinal implant devices from Apex.
 7            Dr. Sabit's involvement in Apex and the financial
 8    incentives provided to him by Apex and his co-conspirators at
 9    times caused him to compromise his medical judgment and cause
10    serious bodily injury to his patients by performing medically
11    unnecessary spine surgeries on some of his patients in whom he
12    implanted Apex spinal implant devices.  On a few occasions, the
13    money that Dr. Sabit made from using Apex spinal implant
14    devices motivated him either to refer patients in for spine
15    surgery who did not need surgery or refer his patients for more
16    complex surgeries, such as multilevel spine fusions, which the
17    patients did not need.
18            The financial incentives provided to Dr. Sabit by Apex
19    and his co-conspirators at times caused him to overinstrument
20    his patients or use more spinal implant devices than were
21    medically necessary to treat his patients in order to generate
22    more sales revenue for Apex which also resulted in serious
23    bodily injury to his patients.
24            All of the surgeries that Dr. Sabit performed using
25    Apex spinal implant devices were predicated on illegal
```

```
 1    kickbacks and false statements which made all those claims
 2    false and fraudulent.
 3              THE COURT:  Okay.  Doctor, you understand what the
 4    charge is against you?
 5              THE DEFENDANT:  I do.
 6              THE COURT:  Okay.  Is your willingness to plead guilty
 7    with regard to this charge, we'll take this one first, under
 8    the Rule 11 plea agreement -- have you been coerced to plead
 9    guilty?
10              THE DEFENDANT:  I have not.
11              THE COURT:  You understand the maximum period of
12    incarceration under the statute and also the maximum fine
13    possibility.  You understand that?
14              THE DEFENDANT:  I do, Your Honor.
15              THE COURT:  Okay.  And then, also, there would be a
16    period of supervised release following any incarceration.  You
17    understand that?
18              THE DEFENDANT:  I do.
19              THE COURT:  And, Mr. Baum, did we talk about the
20    period of supervised release?
21              MR. BAUM:  I believe I mentioned that the period of
22    supervised release for this offense was three years, Your
23    Honor.
24              THE COURT:  Okay.  So you understand after any
25    incarceration, you're out on supervised release and at that
```

```
 1    point if you violate that, you could be brought back and sent
 2    to jail for up to another three years.  You understand that?
 3              THE DEFENDANT:  I do, Your Honor.
 4              THE COURT:  Okay.  So you are pleading guilty pursuant
 5    to a Rule 11 plea agreement that came about after discussions
 6    between you, your attorneys and the attorneys for the
 7    government; is that correct?
 8              THE DEFENDANT:  That is.
 9              THE COURT:  Okay.  Let me just look at the documents.
10              Under the total Rule 11 plea agreement, the guideline
11    range -- counsel for the government can help me, as well as
12    counsel for Defendant -- guidelines are but one factor among
13    many the Court takes into account at the time of sentencing,
14    but the guideline range is 108 to 135 months.  Is that correct?
15              MS. MCCULLOUGH:  Yes, Your Honor.
16              MR. NISKAR:  Yes, Your Honor.
17              MR. LESSING:  Yes, Your Honor.
18              THE COURT:  There's also going to be a special
19    assessment on all the counts, we can take that at one time, and
20    that's $600, a hundred dollars for each count.  Understand
21    that, Doctor?
22              THE DEFENDANT:  I do.
23              THE COURT:  And there's also a provision with regard
24    to restitution to identifiable victims of your offense.  You
25    understand that, sir?
```

1        THE DEFENDANT:  I do, Your Honor.

2        THE COURT:  There's also an exclusion from the

3   Medicare program, other federal health care programs if you

4   plead guilty under this Rule 11.  Do you understand that,

5   Doctor?

6        THE DEFENDANT:  I do, Your Honor.

7        THE COURT:  And if the Court accepts the Rule 11, then

8   the government will dismiss all remaining charges in this case.

9   Do you understand that?

10        THE DEFENDANT:  I do.

11        THE COURT:  And that's correct?

12        MS. MCCULLOUGH:  Yes, Your Honor.

13        THE COURT:  In entering this agreement, this does not

14   compromise, which means prevent, the government from seeking

15   any civil liability or administrative remedies against you.

16   You understand that?

17        THE DEFENDANT:  I do.

18        THE COURT:  If I sentence you within the guideline

19   range set forth before, then you waive any right to appeal the

20   conviction or sentence.  You understand that?

21        THE DEFENDANT:  I do.

22        THE COURT:  Except if there is the claim of

23   ineffective assistance of counsel, then that is not waived on a

24   basis for appeal.  You understand that?

25        THE DEFENDANT:  I do.

```
 1              THE COURT:  And that's correct, Mr. Baum and

 2   Miss MacIntyre (sic), based on Attorney General Holder's

 3   statement, correct?

 4              MS. MCCULLOUGH:  Correct, Your Honor.

 5              MR. BAUM:  Yes, Your Honor.

 6              THE COURT:  And you understand the guidelines are but

 7   one of multiple factors the Court takes into account at the

 8   time of the sentencing under the statute.  You understand that,

 9   sir?

10              THE DEFENDANT:  I do, Your Honor.

11              THE COURT:  Does the counsel for Defendant wish to

12   place any further 11, Rule 11 provisions, on the record with

13   regard to the California indictment?

14              MR. NISKAR:  May I just have one second?

15              THE COURT:  Sure.

16       (Short pause.)

17              MR. NISKAR:  Nothing further as to the California

18   information.

19              THE COURT:  Okay.  With regard to -- we already went

20   over what's covered in the Rule 11 plea agreement.  Apart from

21   that, have I made you any promises of any sentence?

22              THE DEFENDANT:  You have not.

23              THE COURT:  Are there any side deals where your

24   attorneys or the government attorney said, "Forget about what

25   you say on the record but something else is going to happen"?
```

**PLEA HEARING**

1    You haven't got anywhere people promised you things other than

2    what is placed on the record here?

3            MR. NISKAR:  Your Honor, may we approach?

4            THE COURT:  Sure.

5        (Whereupon a sealed bench conference was held.)

6            THE COURT:  Let me ask you again, did anyone threaten

7    or coerce you to plead guilty?

8            THE DEFENDANT:  They did not.

9            THE COURT:  Are you pleading guilty freely or

10   voluntarily because you believe you are guilty?

11           THE DEFENDANT:  I am, Your Honor.

12           THE COURT:  Right now are you under probation, parole

13   or inmate status for any other offenses besides what's charged

14   here?

15           THE DEFENDANT:  I'm not, Your Honor.

16           THE COURT:  Okay.  Please tell me what it is that you

17   did during the period in California that leads you to believe

18   you're guilty of the offense of conspiring to commit health

19   care fraud.

20           THE DEFENDANT:  I conspired with one other

21   neurosurgeon and three other people to perform surgeries that

22   were sometimes overinstrumented using a Apex brand of screws

23   which resulted in illegal kickback scheme.

24           THE COURT:  Okay.  Mr. Baum, do you want to ask

25   further questions to further establish a factual basis?

1          MR. BAUM:  Yes.

2          THE COURT:  Oh, first, what location, what city or

3    state, did this take part?

4          THE DEFENDANT:  This was in Ventura, California.

5          THE COURT:  That's the Central District of California.

6          And what period of time are we talking about?

7          THE DEFENDANT:  From 2010.

8          THE COURT:  Okay.

9          Proceed, Mr. Baum.

10          MR. BAUM:  Dr. Sabit, were you part of Apex Medical

11    Technologies between approximately February, 2010, through

12    August of 2012?

13          THE DEFENDANT:  I was.

14          MR. BAUM:  And between approximately February of 2010

15    and March of 2011 were you in the Central District of

16    California?

17          THE DEFENDANT:  I was.

18          MR. BAUM:  In approximately March of 2011 through

19    approximately August of 2012 were you in the Eastern District

20    of Michigan?

21          THE DEFENDANT:  I was.

22          MR. BAUM:  During that time period did you perform

23    surgeries both in the Central District of California and the

24    Eastern District of Michigan on patients using Apex spinal

25    implant devices?

1          THE DEFENDANT:  I did.

2          MR. BAUM:  Was your use of Apex spinal implant devices

3    in every surgery that you performed using those devices

4    predicated on illegal kickbacks?

5          THE DEFENDANT:  Yes.

6          MR. BAUM:  Were they also predicated on false

7    statements that were made to the Medicare program that you were

8    going to be compliant with all Medicare rules and regulations

9    including compliance with the Antikickback Statute?

10          THE DEFENDANT:  Yes.

11          MR. BAUM:  During your -- did your involvement in Apex

12    Medical Sup -- or Technologies incentivize you to perform

13    medically unnecessary surgeries at times on your patients?

14          THE DEFENDANT:  Yes.

15          MR. BAUM:  Did your involvement in Apex Medical

16    Technologies at times incentivize you to overinstrument your

17    patients?

18          THE DEFENDANT:  Yes.

19          MR. BAUM:  Did your -- and as a result of you

20    performing medically unnecessary surgeries on your patients and

21    using more -- or overinstrumenting your patients, did you at

22    times cause serious bodily injury to your patients?

23          THE DEFENDANT:  I did.

24          MR. BAUM:  No further questions, Your Honor.

25          THE COURT:  Okay.  Does defense counsel wish to ask

1    further questions to establish a factual basis?

2              MR. NISKAR:  No.  We're satisfied.

3              MR. LESSING:  We're satisfied, Your Honor.

4              THE COURT:  Okay.  Thank you.

5              How do you plead, sir?

6              THE DEFENDANT:  I plead guilty, Your Honor.

7              THE COURT:  The Court finds the Defendant's plea as to

8    the California indictment is knowingly, freely and voluntarily

9    made.  The elements of the offense to which he pleads guilty

10   have been made out by his statements in court.  The Court will

11   accept the plea, take the Rule 11 under advisement.

12             And now let's proceed to the Michigan indictment.

13   That charges basically -- tell us, Miss --

14             MS. MCCULLOUGH:  Yes, Your Honor.

15             THE COURT:  Thank you.

16             MS. MCCULLOUGH:  That charges -- Counts 1 through 4 of

17   the first superseding information charges the Defendant with

18   the violation of 18 U.S.C. Section 1347 which is substantive

19   counts of health care fraud.  Count 5 charges the Defendant

20   with unlawful distribution of a controlled substance in

21   violation of 21 U.S.C. Section 841(a)(1).

22             Your Honor, the penalties for Counts 1 through 4 are

23   up to 20 years imprisonment, a $250,000 fine and at least two

24   years of supervised release.  The penalties with respect to

25   Count 5 are a million dollar fine and a lifetime term of

```
 1    supervised release.  The parties have negotiated --
 2            THE COURT:  There is no incarceration period connected
 3    to Count 5?
 4            MS. MCCULLOUGH:  Yes, Your Honor.  I apologize.  Up to
 5    20 years as well.
 6            THE COURT:  Okay.  Okay.
 7            MS. MCCULLOUGH:  And the parties have negotiated, Your
 8    Honor, a lifetime term of supervised release to be imposed with
 9    respect to Count 5.
10            With respect to particular supervised release term,
11    the Defendant has agreed to be restricted from any employment
12    in any capacity in the medical profession.  That restriction
13    will cover the practice of medicine, owning and operating a
14    medical clinic, conducting any medical research, consulting as
15    an expert, manufacturing or participating in the manufacturing
16    of any medical devices, membership in any physician-owned
17    distributorship and any employment in any capacity in any
18    medical facility.  And those are the penalties, Your Honor,
19    with respect to Counts 1 through 4 and Count 5.
20            Would the Court like me to summarize the charges?
21            THE COURT:  Please.
22            MS. MCCULLOUGH:  Your Honor, Defendant, as I've
23    already stated, is pleading guilty to the first superseding
24    indictment, and it charges the Defendant with four counts of
25    health care fraud.
```

```
 1              THE COURT:  Information.

 2              MS. MCCULLOUGH:  Information, yes.

 3              THE COURT:  Okay.  Thanks.

 4              MS. MCCULLOUGH:  Thank you, Your Honor.

 5         With respect to that information, the Defendant

 6    engaged in a scheme and artifice to defraud Medicare, Medicaid

 7    and private insurance companies by convincing his patients to

 8    undergo spinal fusion surgeries with instrumentation which he

 9    never rendered then billing private and public health care

10    benefit programs for these fraudulent services.

11         As part of the scheme, Your Honor, Dr. Sabit would

12    operate on patients and dictate that he had performed a spinal

13    fusion surgery with instrumentation which was never rendered.

14    This invasive surgery would cause serious bodily injury to some

15    of his patients.  Sabit's operative reports and treatment

16    records contained false statements about the procedure

17    performed and the instrumentation used in the procedure.

18         Your Honor, on occasion Dr. Sabit dictated that he

19    placed screws which, in fact, he did not place.  Counts 1

20    through 4 specifically outline four patients that underwent

21    these procedures.  Would the Court like me to go through each

22    specific count?

23              THE COURT:  Well, let me just ask.  Mr. Niskar,

24    Mr. Lessing, did you go over the particular names of the -- or

25    the initials of the patients and where it was performed and
```

```
 1   what specifically was violated under the law in terms of the
 2   instrumentation and lack of instrumentation?
 3             MR. LESSING:  We did, Your Honor.  We went through it
 4   with Dr. Sabit in detail.
 5             THE COURT:  Okay, then.  Is that correct, Doctor, you
 6   have gone over that with them?
 7             THE DEFENDANT:  It is, Your Honor.
 8             THE COURT:  Then I don't think we need for you to go
 9   over that now.  We'll just deal as we get to each count --
10             MS. MCCULLOUGH:  Thank you, Your Honor.
11             THE COURT:  -- as to what he did.
12             MS. MCCULLOUGH:  And as to Count 5, Your Honor?
13             THE COURT:  Yes.
14             MS. MCCULLOUGH:  The information charges Defendant on
15   October 22nd of 2012, Dr. Sabit did knowingly, intentionally
16   and unlawfully distributed Schedule II prescription drug
17   controlled substance, specifically Roxicodone, oxycodone, HCl,
18   30 milligrams.  Dr. Sabit committed offense by writing a
19   prescription for a Schedule II controlled substance for no
20   legitimate medical purpose and then he transferred the
21   prescription to Patient 5 to be filled.
22             THE COURT:  Okay.  And you explained that to your
23   client as well, Mr. Lessing and Mr. Niskar?
24             MR. LESSING:  Yes, Your Honor.
25             MR. NISKAR:  Yes, Your Honor.
```

1        THE COURT:  Is that correct, Doctor?

2        THE DEFENDANT:  That is correct.

3        THE COURT:  Then let's proceed to the various counts.

4        The same Rule 11 applies with regard to the guideline,

5   sentencing guidelines.

6        MS. MCCULLOUGH:  They do, Your Honor, and if I may

7   just go over paragraph 7 of that Rule 11 plea agreement.

8        THE COURT:  Sure.

9        MS. MCCULLOUGH:  The Court noted that there -- the

10  government could pursue civil liability.  The bottom portion of

11  paragraph 7 of the Rule 11 pertains to civil liability for two

12  cases pending out of California.  And, Your Honor, with respect

13  to those two cases only, the parties have agreed there will not

14  be a restitution order entered with respect to those civil

15  cases.

16        THE COURT:  Okay.  And is that correct, Mr. Niskar,

17  Mr. Lessing?  Sure.

18        MR. LESSING:  Just one moment, Your Honor.

19        THE COURT:  Okay.

20        MR. NISKAR:  May we have one second?

21        THE COURT:  Sure.

22     (Short pause.)

23        MS. MCCULLOUGH:  Your Honor, if we could just have one

24  moment.  I apologize.

25        THE COURT:  Yeah, that's fine.

```
 1          (Discussion held off the record between counsel at
 2       4:42 p.m.)
 3             MR. NISKAR:  Just one second, Your Honor.  We're
 4       making a change.
 5             THE COURT:  Okay.
 6          (Short pause.)
 7             MR. LESSING:  Your Honor, you have the original copy
 8       of the --
 9             THE COURT:  I believe there it is.
10             MR. LESSING:  Great.  We're going to need to make a
11       quick change.
12             THE COURT:  That's fine.
13          (Short pause.)
14             MR. LESSING:  Thank you for your patience, Your Honor.
15             THE COURT:  No problem.
16             MS. MCCULLOUGH:  Your Honor, with respect to
17       paragraph 7, the parties have amended it to state specifically:
18       In light of the parties' intention to resolve all pertinent
19       pending civil actions including *United States versus Reliance*
20       *Medical Systems* and *United States ex rel. versus -- Savitch*
21       *et al.* --
22             THE COURT:  S-A-V-I-T-C-H, right.
23             MS. MCCULLOUGH:  Yes.  The parties agree that there
24       will not be a separate restitution order as to the Defendant,
25       Dr. Sabit, as part of the resolution of the above referenced
```

```
 1    cases.  And the parties agree that the appropriate disposition

 2    of the civil cases does not include civil judgments.  And all

 3    parties initialed, Your Honor.

 4              THE COURT:  Okay.

 5              MR. LESSING:  And for the record, Dr. Sabit has signed

 6    that paragraph.

 7              THE COURT:  You've read that and you understand that,

 8    Doctor?

 9              THE DEFENDANT:  I do.

10              THE COURT:  Okay.  Very good.

11              MS. MCCULLOUGH:  Thank you, Your Honor.  We appreciate

12    that time.

13              THE COURT:  No problem.  Then let us proceed to the

14    various counts and to the -- let's go to the first count that

15    relates to, I believe that's Patient Number 1 who underwent

16    spinal surgery around February of 2012, and in the report that

17    you purportedly performed procedures, performed a fusion with

18    instrumentation at the L4-L5 and S1 levels and utilized, you

19    stated, the Zimmer, Z-I-M-M-E-R, transfacet,

20    T-R-A-N-S-F-A-C-E-T, screw system when, in fact, that you did

21    not place that medical device and, nevertheless, caused billing

22    to get $26,067 for that surgery and submitted the claims.

23              How do you plead as to that count, sir?

24              THE DEFENDANT:  Guilty.

25              THE COURT:  Okay.  Please tell me what it is that you
```

**PLEA HEARING**

1    did in around February, 2012, that leads you to believe you're

2    guilty of that count.

3                  MR. NISKAR:  One second, please.

4         (Discussion held off the record between the Defendant and

5             counsel at 4:49 p.m.)

6                  THE DEFENDANT:  Your Honor, on February 29, 2012, I

7    operated on a patient.  In my dictation I stated I --

8                  THE COURT:  A little louder, a little slower because

9    Ms. Lizza has to take down every word, so slower.  Thanks.

10                 THE DEFENDANT:  In my dictation I stated that I used a

11   Zimmer transfacet screw.  I did not use a transfacet screw, and

12   I did not perform a fusion using a Zimmer transfacet screw.  I

13   dictated a note stating that I had done the above and submitted

14   that as a bill.

15                 THE COURT:  And you got paid by Medicare, Medicaid?

16                 THE DEFENDANT:  That is correct.

17                 THE COURT:  Any questions you want to -- and this was

18   in what city?

19                 THE DEFENDANT:  This was in Pontiac, Michigan.

20                 THE COURT:  Okay.  That's the Eastern District of

21   Michigan.

22                 Any questions you want to further ask?

23                 MS. MCCULLOUGH:  Just --

24                 THE COURT:  -- with regard to Count 1?

25                 MS. MCCULLOUGH:  Just one, Your Honor.

**PLEA HEARING**

1          THE COURT:  Okay.

2          MS. MCCULLOUGH:  You knew when you submitted the claim

3    or caused the claim to be submitted that it was false?

4          THE DEFENDANT:  That's correct.

5          MS. MCCULLOUGH:  Thank you, Your Honor.

6          THE COURT:  Let's go to Count 2.  You've read these

7    counts, so why don't you just say what it is that you did on or

8    about April, 2012, that leads you to believe you're guilty of

9    health care fraud with regard to Count 2, Doctor.

10         THE DEFENDANT:  On April 13th of 2012 I operated on a

11   patient in Sinai-Grace Hospital, which is in Detroit, Michigan.

12   I dictated that I operated at L4-L5 and S1 levels using the

13   Zimmer transfacet screw system.  I did not use the Zimmer

14   transfacet screw system, and I did not perform a fusion using

15   the Zimmer transfacet screw system.  I billed Medicaid in the

16   amount of $28,605 and was paid some amount of money for what I

17   had dictated.

18         THE COURT:  And you knew that your statements were

19   false?

20         THE DEFENDANT:  That's correct, Your Honor.

21         THE COURT:  And you made them to receive the money

22   from the government?

23         THE DEFENDANT:  That's correct, Your Honor.

24         THE COURT:  Any further questions from the government

25   to --

PLEA HEARING

```
 1              MS. MCCULLOUGH:  No questions, Your Honor.

 2              THE COURT:  How do you plead as to that?

 3              THE DEFENDANT:  I plead guilty.

 4              THE COURT:  Did I go over the thing as to previous

 5    count?

 6              MR. NISKAR:  I don't think you asked him how he plead

 7    to Count 1.

 8              THE COURT:  As to Count 1, going back to that, how do

 9    you plead as to Count 1 which dealt with --

10              MR. LESSING:  Patient 1, Your Honor.

11              THE COURT:  -- Patient 1?

12              THE DEFENDANT:  I plead guilty, Your Honor.

13              THE COURT:  The Court finds, as to Count 1, the

14    Defendant's statements has met the elements, required elements

15    of the offense, knowingly, freely, voluntarily made, and the

16    Court will accept the plea to Count 1, plea of guilty, and

17    we'll take the Rule 11 under advisement.

18              As to Count 2 which dealt with Patient Number 2, how

19    do you plead as to that?

20              THE DEFENDANT:  Guilty, Your Honor.

21              THE COURT:  Okay.  As to that, the Court finds the

22    Defendant's statements are knowingly, freely and voluntarily

23    made.  The elements of the offense to which he pleads guilty

24    has been made out by his statements in court.  The Court will

25    accept the plea, take the Rule 11 under advisement.
```

**PLEA HEARING**

1          Let's go to Count 3.  That deals with Patient

2    Number 3.  Please tell me what it is that you did on or about

3    March of 2012 with regard to Patient Number 3 that leads you to

4    believe you're guilty of health care fraud.

5          THE DEFENDANT:  On March 21, 2012, I operated on this

6    patient in Pontiac, Michigan.  Again, I dictated a report

7    stating that I had performed a fusion at the L4-L5 level using

8    the Zimmer transfacet screw system when, in fact, I had not

9    done that.  I submitted the bill to Blue Cross for $20,383 and

10   was paid some amount of that and I did this knowing that I was

11   making a false statement.

12         THE COURT:  Okay.  Any questions the government wants

13   to ask to further establish a factual basis?

14         MS. MCCULLOUGH:  The government is satisfied with the

15   factual basis, Your Honor.

16         THE COURT:  How do you plead as to Count 3?

17         THE DEFENDANT:  Guilty.

18         THE COURT:  The Court finds the Defendant's plea as to

19   Count 3 is knowingly, freely, voluntarily made.  The elements

20   of the offense to which he pleads guilty have been made out by

21   his statements in court.  The Court will accept the plea to

22   Count 3, take the Rule 11 under advisement.

23         Let's go to Count 4 which deals with Patient Number 4.

24         THE DEFENDANT:  On March 31, 2012, I operated on a

25   patient in Lapeer, Michigan.  I dictated that I had performed

```
 1    an instrumented fusion at L4-5 and S1 using the Zimmer
 2    transfacet screw system.  I had not done this yet I dictated
 3    this.  I submitted this bill to Medicaid and was, again, paid
 4    some amount of what I had billed, and I did this knowing that I
 5    had not, in fact, done this above operation.
 6             THE COURT:  So you had submitted fraudulent statements
 7    in the billing to receive the payment, correct, Doctor?
 8             THE DEFENDANT:  That's correct.
 9             THE COURT:  Okay.  Any questions that the government
10    wishes to further ask with regard to Count 4?
11             MS. MCCULLOUGH:  No, Your Honor.  Government is
12    satisfied with factual basis.
13             THE COURT:  How do you plead, sir, as to Count 4?
14             THE DEFENDANT:  I plead guilty.
15             THE COURT:  The Court finds Defendant's plea is
16    knowingly, freely, voluntarily made.  The elements of the
17    Count 4 have been made out by his statements in court.  The
18    Court accepts the plea to Count 4, take the Rule 11 under
19    advisement.
20             Count 5 charges unlawful distribution of a controlled
21    substance.  Please -- what is the factual basis for this
22    offense?
23             THE DEFENDANT:  On October 22, 2012, I prescribed
24    oxycodone, 30 milligrams, to a patient who did not need the
25    medication.  Wrote the prescription out in his name, and he
```

1    presumably filled the prescription.

2              THE COURT:  Okay.  And you did it for no legitimate

3    medical purpose, the prescription?

4              THE DEFENDANT:  That's correct.

5              THE COURT:  Okay.  And this occurred in what city?

6              THE DEFENDANT:  Probably Southfield, Michigan.

7              THE COURT:  That's Eastern District of Michigan.

8              And you knew that oxycodone was a controlled narcotic;

9    is that correct?

10             THE DEFENDANT:  That's correct.

11             THE COURT:  Okay.  Any questions the government wants

12   to ask to further establish a factual basis?

13             MS. MCCULLOUGH:  No, Your Honor.  Government is

14   satisfied with the factual basis.

15             THE COURT:  Okay.  How do you plead as to Count 5,

16   sir?

17             THE DEFENDANT:  Guilty.

18             THE COURT:  The Court finds the Defendant's plea is

19   knowingly, freely and voluntarily made.  The elements of the

20   offense to which he pleads guilty have been made out by his

21   statements in court.  We'll accept the guilty plea, take the

22   Rule 11 under advisement and we'll refer you to the probation

23   department for a presentence report.

24             And, Ms. Tofil, if you help us with a sentencing date,

25   we will conclude this proceeding.

```
 1              THE COURT CLERK:  September 15th at 1:00 p.m.

 2              THE COURT:  Okay.  Very good.

 3              Anything further from the government?

 4              MR. BAUM:  Your Honor, just to be clear, did the Court

 5   discuss the appellate waiver with the Defendant?

 6              THE COURT:  I did at the initial get-go, yes.

 7              MR. BAUM:  I apologize, Your Honor.

 8              THE COURT:  That covers the plea agreement.  It's a

 9   single plea agreement --

10              MR. BAUM:  Thank you.

11              THE COURT:  -- both indictments.  Informations, sorry.

12              Anything further from the defense?

13              MR. NISKAR:  Not on behalf of Dr. Sabit.

14              MR. LESSING:  No, Your Honor.

15              THE COURT:  Thank you.  We are concluded.

16              MS. MCCULLOUGH:  Thank you, Your Honor.

17         (Proceedings concluded, 4:57 p.m.)

18                         -    -    -

19

20

21

22

23

24

25
```

**PLEA HEARING**

```
 1 ‖                   CERTIFICATION OF REPORTER

 2 ‖

 3 ‖     I, Leann S. Lizza, do hereby certify that the above-entitled

 4 ‖  matter was taken before me at the time and place hereinbefore

 5 ‖  set forth; that the proceedings were duly recorded by me

 6 ‖  stenographically and reduced to computer transcription; that

 7 ‖  this is a true, full and correct transcript of my stenographic

 8 ‖  notes so taken; and that I am not related to, nor of counsel to

 9 ‖  either party, nor interested in the event of this cause.

10 ‖

11 ‖

12 ‖  S/Leann S. Lizza                            6-3-2015

13 ‖  Leann S. Lizza, CSR-3746, RPR, CRR, RMR        Date

14 ‖

15 ‖

16 ‖

17 ‖

18 ‖

19 ‖

20 ‖

21 ‖

22 ‖

23 ‖

24 ‖

25 ‖
```